**Mary Jean WATSON, Appellant,**

v.

**Joseph H. McSOUD, Appellee,**

and

**Walter Gowers, Defendant.**

**No. 49426.**

Court of Appeals, of Oklahoma, Division 2.

June 7, 1977.

Released for Publication by Order of Court of Appeals, June 30, 1977.

Joe Sam Vassar, Blackstock, McMillan & Vassar, Bristow, for appellant.

Ray H. Wilburn, Tulsa, for appellee.

BRIGHTMIRE, Presiding Judge.

Nature called plaintiff's live-in collie dog at the fourth hour past midnight. Sleepily its mistress slipped out of bed, opened the door, and peered into the darkness of a dry autumn morning. The dog ran ahead and down seven steps to a landing where it stood wagging its tail looking up at plaintiff as she stepped out onto the small stoop in front of her second floor flat. There in the predawn stillness plaintiff could make out the general location of the steps covered with pieces of carpet remnants a neighbor had placed on them several days before. She could not, however, tell that one piece of carpet had slipped out of place and now extended about six inches or so beyond the step. As she stepped down on it plaintiff discovered to her horror, no step was there. Unable to control herself she began falling and kept on until she reached a landing at the bottom of the flight of steps. There she lay bruised and wondering if she may have ruined the results of recent back surgery.

To recover compensation for injuries received on that occasion the 49-year-old woman brought this lawsuit against the owner of the apartment, Joseph McSoud, and her neighbor, Walter Gowers, alleging various specifics of negligence against each as the cause of her injuries.

Besides a general denial, defendant McSoud averred that: (1) plaintiff, not he, exercised "control of the stairway"; (2) plaintiff had "full knowledge" of the stairway's open and obvious condition; and (3) plaintiff "negligently used the stairway," *i. e.*, she did not use ordinary care for her own safety.

On September 30, 1975, shortly after defendant's deposition was taken, defendant McSoud moved for a summary judgment saying "that the facts are undisputed as shown by the pleadings and the deposition of the plaintiff . . ." and they show defendant is not liable. Two weeks later, at pretrial, the court directed the parties to submit briefs. January 28, 1976 plaintiff served some interrogatories on defendant McSoud to be answered within 20 days. On February 12 defendant McSoud filed his brief in support of his motion for judgment and on February 18 applied for an extension of time to answer plaintiff's interrogatories. On that same day—without reading plaintiff's deposition or awaiting answers to the interrogatories—the trial court sustained defendant McSoud's motion[1] and then, according to court minute, declared defendant's application for an extension of time to answer interrogatories "moot."

The propriety of the judgment below turns essentially upon whether the defending landlord owed his tenant a duty to maintain and keep safe the seven steps ascending from the landing to the stoop. Appellant Watson says he does have a duty in view of the holdings in *Geesing v. Pendergrass*, Okl., 417 P.2d 322 (1966) and *Jack Healy Linen Service Co. v. Travis*, Okl., 434 P.2d 924 (1967). Appellee McSoud on the other hand insists a landlord has no such duty under the rationale of *Price v. Smith*, Okl., 373 P.2d 242 (1962) and some cases decided in other states. Moreover, argues McSoud in a second proposition, Watson was guilty of "contributory negligence" and this in itself justified the summary adjudication.

As explained by Prosser a lessor surrenders both possession and control of land to the lessee retaining only a post-term reversionary interest.[2] This means lessor retains not even a right of re-entry during term without permission of the lessee. Like those in early England, the courts—and in many instances the legislatures—in this country have embraced the general rule that a lessor is under no obligation to anyone to look after leased premises or keep them in repair and is not responsible either to persons injured on the land or to those outside of it for conditions which develop or are created by the tenant after possession has been transferred. Through the years, though, the same courts have engrafted several exceptions onto the rule. Prosser identifies some six different circumstances under which liability has been imposed upon a landlord, namely, where: (1) concealed dangerous conditions are known to the lessor; (2) conditions exist dangerous to those outside of the premises; (3) premises are leased for admission of the public; (4) parts of premises are retained and controlled by lessor; (5) lessor agrees to repair; (6) lessor is negligent in making repairs.

It is the fourth mentioned exception we are concerned with here.

At midcentury the high court of this state incorporated into our common law the most widely accepted version of the landlord and tenant law exception[3]—the fourth

---

1. The "Journal Entry of Judgment" discloses that the court sustained defendant's motion for summary judgment but did not actually render judgment.

2. W. Prosser, Law of Torts, § 63 (4th ed. 1971).

3. Restatement (Second) of Torts § 360 (1965). That work reports the exception to be in the mainstream of American law. It is expressed this way:

"A possessor of land who leases a part thereof and retains in his own control any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sublessee for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition

one mentioned by Prosser—in *Arnold v. Walters*, 203 Okl. 503, 224 P.2d 261 (1950). The law of *Arnold*, as stated in its single syllabus,[4] was adopted as a basis for upholding a judgment granted a tenant who was injured while trying to walk on a dilapidated walk to an outdoor privy. The exception remained the law of this state until implicitly abolished 14 years later in *Jackson v. Land*, Okl., 391 P.2d 904 (1964). Without even mentioning *Arnold*, the Oklahoma Supreme Court reversed a judgment for a tenant who one stormy night was injured when she fell on a badly broken common driveway—a manmade defect. The basis for the reversal was that the *only* duty the landlord owes a tenant in regard to common ways is that which a property owner owes an invitee in this state—to warn of "hidden dangers, traps, snares, pitfalls, and the like," which the invitee does not know about and could not become aware of in the "exercise of ordinary care." Thus, after *Jackson*, we were left with only the first exception discussed by Prosser.

Still later in *Buck v. Del City Apartments, Inc.*, Okl., 431 P.2d 360 (1967) the common law concerning innkeepers was invoked in a "natural cause" case—without mentioning *Jackson*, incidentally—to protect a motel owner from liability for injury sustained by a guest when she slipped and fell on an icy step down from her cabin porch. The rule applied was similar to the invitation rule in that under it the lessor's duty simply did not arise in the presence of an obvious defect no matter how dangerous it might be. And without any expression of bereavement the court in *Turner v. Rector*, Okl., 544 P.2d 507 (1975) took note of the late common way exception's demise and applied an innkeeper's liability as conceived in *Buck* in an apartment complex case, thus completing the interment of *Arnold*.

It is true that some courts have justified the common way exception by saying the tenant is analogous to an invitee. *Wool v. Larner*, 112 Vt. 431, 26 A.2d 89 (1942). But in such jurisdictions the consequences of the comparison have far less substantive effect than in Oklahoma because of a different law of invitation. Without belaboring the point it is sufficient to point out that in other jurisdictions generally (and in Restatement [Second] of Torts, § 360 [1965]) the host has an "affirmative" obligation to provide a reasonably safe place for his guests. And if an unsafe condition is open and obvious such fact does not lessen the landowner's duty, but merely provides the basis for a defense such as contributory negligence. In contrast, the invitational rule adopted in this state distinctly differs in that if the court concludes the defect is not in the nature of a "hidden danger," it is tantamount to saying that no duty ever arose in the first place for the landlord to breach. One effect of this difference is to enable the court to dispose of slip and fall cases without a jury which it would not be able to do otherwise because of our constitutional provision requiring the defense of contributory negligence or assumption of the risk to be submitted to the jury as an issue of fact. Okla.Const. art. 23, § 6.

The only question left here, then, is whether any unresolved issue exists in this record concerning a material fact which if resolved in plaintiff's favor would support a finding of liability on the part of the landlord? As we noted earlier when plaintiff stepped out the door that morning her status was that of an invitee. As we have seen, as an invitee she was due no duty on the part of the landlord except to be warned of hidden dangers she knew not of nor could not, with reasonable care, have

and the unreasonable risk involved therein and could have made the condition safe."

4. It reads:

"Where the owner of an apartment house leases parts thereof to different tenants and expressly or impliedly reserves other parts thereof, such as entrances, halls, stairways, porches, walks, etc., for the common use of different tenants it is the owners *[sic]* duty to exercise reasonable care to keep safe such parts of which he so reserves control, and if he is negligent in this regard and a personal injury results by reason thereof to a tenant, he is liable, provided the injury occurs while such part of the premises is being used in the manner intended."

known about. Here plaintiff says the cause of the fall was a piece of rug which had slipped out of place and deceived her into thinking it was supported by a step. One would, of course, have to say the rug was "open and obvious." Plaintiff admits she knew it was there and that it had been placed there sometime before by her next-door neighbor to reduce noise. Matter of fact plaintiff says she had removed, cleaned and replaced the rug on more than one occasion during the two short weeks she had lived in the abode.

While the wayward rug remnant created what literally must be referred to as a "condition in the nature of" a hidden danger or trap, still it is not the one contemplated by the invitee rule under the circumstances of this case. The misplaced rug was but a predictable consequence of the original act of placing and leaving pieces of rug lying unsecured on the steps. Inherent in this deliberately created condition lurked the likelihood of rug displacement with every step taken by dog or man. And it was this condition that plaintiff admitted not only being aware of but helping to maintain and perpetuate—an admission which precludes the establishment of liability on landlord McSoud.

The order appealed from is therefore affirmed.

BACON and NEPTUNE, JJ., concur.